An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1024

Filed 18 June 2025

Cabarrus County, No. 20CRS053990-120

STATE OF NORTH CAROLINA

       v.

DANA DENZIL MOSS

Appeal by defendant from judgment entered 16 May 2024 by Judge Martin B. McGee in Cabarrus County Superior Court. Heard in the Court of Appeals 20 May 2025.

>*Attorney General Jeff Jackson, by Assistant Attorney General Joseph R. Mouer, for the State.*

>*The Law Office of Joseph E. Gerber, PLLC, by Joseph E. Gerber, for defendant-appellant.*

ARROWOOD, Judge.

Dana Denzil Moss ("defendant") appeals from judgment and commitment upon revocation of probation entered 16 May 2024. Defendant's probation was revoked and the trial court activated his suspended sentence and imposed 10 to 21 months imprisonment. On appeal, defendant argues the trial court lacked subject matter

jurisdiction to revoke probation after it had expired because a 326-day retroactive probation revocation was not for good cause as required by N.C.G.S. § 15-1344(f). In the alternative, defendant argues that even if the trial court had jurisdiction, it committed prejudicial error in finding that each of defendant's alleged violations were independently sufficient to revoke probation. Additionally, defendant alternatively argues that even if the trial court had jurisdiction, it prejudicially erred in not allowing defendant to confront witnesses with personal knowledge as to his alleged violations. For the following reasons, we affirm the trial court.

## I.     Background

On 9 November 2020, defendant was indicted for four offenses: (1) felony possession with intent to manufacture, sell, or distribute a Schedule II controlled substance; (2) misdemeanor possession of a Schedule VI controlled substance; (3) misdemeanor possession of drug paraphernalia; and (4) felony maintaining a dwelling that was used for keeping and selling controlled substances. On 25 June 2021, defendant pleaded guilty to one consolidated Class H felony and was sentenced to 10 to 21 months imprisonment. However, defendant's sentence was suspended and he was placed on 24 months of supervised probation.

In November 2022, Officer Hunter Wood ("Officer Wood") worked for the Kannapolis Police Department and conducted a narcotics investigation on defendant's brother, Kareem Russell ("Mr. Russell"). During this investigation, Officer Wood obtained a search warrant for a residence in Charlotte, North Carolina

belonging to Mr. Russell and another search warrant for a residence belonging to defendant's mother, Wanda Moss ("Ms. Moss"). On 19 January 2023, Officer Wood, along with other members of the Charlotte Mecklenburg Police Department, executed both search warrants on the residences. However, Officer Wood only searched the residence belonging to Mr. Russell and Ms. Moss's home was searched by Investigator Wagner and other members of the Cabarrus County Sheriff's Office. A vehicle located on the curtilage of Ms. Moss's property was searched and the vehicle contained 18.7 grams of oxycodone, 4.8 grams of MDMA, 4.5 grams of cocaine, 2.1 grams of crack cocaine, 55.5 pounds of marijuana, shipping labels addressed to defendant, a 9mm Taurus G2C handgun and a 12-gauge shotgun, which had been altered to have the serial numbers removed. The vehicle was registered to defendant.

On the day defendant's vehicle was searched, he was on probation for the judgment entered 25 June 2021 pursuant to his guilty plea. On 25 January 2023, defendant was charged with six violations of his probation: (1) defendant tested positive for marijuana on 27 September 2021 and 23 January 2023; (2) defendant had paid $293.13 on a total amount due to the Clerk of Superior Court, leaving defendant $558.87 in arrears; (3) defendant had paid $306.87 towards supervision fees, leaving him $453.13 in arrears; (4) defendant was found to be in possession of a 9mm Taurus G2C and a 12-gauge shotgun on 19 January 2023; (5) defendant was charged with possession of marijuana paraphernalia and possession of drug paraphernalia on 23 January 2023; and (6) defendant was charged with trafficking in marijuana,

trafficking in opium or heroin, possession with intent to manufacture, sell, or distribute cocaine, possession with intent to manufacture, sell, or distribute MDMA, maintaining a vehicle or dwelling with controlled substances, possession of a weapon of mass destruction, and altering or removing a serial number from a firearm.

On 25 January 2023, the Cabarrus County Clerk of Court issued an order for arrest for defendant. On 27 January 2023, the Cabarrus County trial court issued an order for a preliminary hearing on defendant's probation violation. On 25 June 2023, defendant's probation expired.

The hearing for defendant's probation violation did not take place until 13 May 2024. During the hearing, counsel for defendant objected to testimony from Officer Wood, who testified as to what other officers had found at Ms. Moss's home, when he was not present on the scene. Specifically, defendant's counsel objected on hearsay grounds, stating that because Officer Wood was not present when the vehicle was searched, he could not testify as to what Ms. Moss, who was present at the scene, said that day. The State noted that rules of evidence do not apply during probation hearings and the trial court agreed, stating that good cause existed for not allowing confrontation under the circumstances presented. Officer Wood then went on to testify that Ms. Moss said the vehicle found on her property was locked and defendant had the keys to the vehicle.

Ms. Moss testified on behalf of defendant. Although Ms. Moss testified that she did not tell officers that defendant had the keys to the vehicle found on her

property, she was later impeached by evidence of her being convicted of three counts of obtaining property by false pretenses. Defendant did not testify during the probation hearing.

After closing arguments, the trial court held that defendant had willfully violated his probation with regards to all six probation violations he was cited for. Specifically, the trial court found that good cause existed to not allow defendant to confront the officers who searched his vehicle and good cause existed to revoke defendant's probation and reinstate his sentence because defendant willfully violated his probation by committing a criminal offense.

On 16 May 2024, the trial court entered a Judgment and Commitment Upon Revocation of Probation Form ("probation revocation form"). On this form, the trial court checked three boxes: (1) Box 2 which indicated the trial court held a hearing for defendant's probation violation report and the trial court is "reasonably satisfied in its discretion that the defendant violated each of the conditions of the defendant's probation as set forth below"; (2) Box 4 which indicates "[e]ach violation is, in and of itself, a sufficient basis upon which this Court should revoke probation and activate the suspended sentence"; and (3) Box 5(a), which indicates the trial court may revoke defendant's probation "for the willful violation of the condition(s) that he/she not commit any criminal offense under N.C.G.S. § 15A-1343(b)(1)[.]" Defendant entered oral notice of appeal during his probation hearing on 13 May 2024.

## II. Discussion

On appeal, defendant argues the trial court lacked subject matter jurisdiction to belatedly revoke defendant's probation because the trial court revoked defendant's probation 326 days after it had expired without good cause shown as required by N.C.G.S. § 15A-1344(f).  Alternatively, defendant argues that even if the trial court had jurisdiction to revoke his probation, the trial court (1) prejudicially erred in finding that each alleged violation listed on the probation revocation form was independently sufficient to revoke probation and (2) prejudicially erred in not allowing confrontation of witnesses with personal knowledge as to three alleged violations.  We address each argument in turn.

## A.    Retroactive Probation Revocation

Defendant first argues the trial court lacked subject matter jurisdiction to revoke defendant's probation 326 days after his probation expired because the retroactive probation revocation was not for good cause shown as required by N.C.G.S. § 15A-1344(f).  Specifically, defendant argues the trial court's finding for good cause was an abuse of discretion not supported by the record.  We disagree.

N.C.G.S. § 15A-1344(f) provides:

> The court may extend, modify, or revoke probation after the expiration of the period of probation if all of the following apply:
> (1)    Before the expiration of the period of probation the State has filed a written violation report with the clerk indicating its intent to conduct a hearing on one or more violations of one or more conditions of probation.
> (2)    The court finds that the probationer did violate one or more conditions of probation prior to the expiration of

the period of probation.
(3)     The court finds for good cause shown and stated that the probation should be extended, modified, or revoked.
(4)     If the court opts to extend the period of probation, the court may extend the period of probation up to the maximum allowed under G.S. 15A-1342(a).

N.C.G.S. § 15A-1344(f) (2024).  It is undisputed in this case that the State filed a written violation report prior to defendant's probation expiring on 25 June 2023 and the trial court indicated its intent to hold a hearing on these alleged violations when it filed an order for a preliminary hearing on 27 January 2023.  It is also undisputed that the trial court did find that defendant violated one or more conditions of his probation prior to the expiration of his probation period.  However, defendant argues the State did not show good cause that defendant's probation should be revoked and his sentence reinstated.

"Consistent with [our Supreme Court's] determinations in *Rankin* and *Morgan*, the 'good cause' contemplated by N.C.G.S. § 15A-1344(f)(3) therefore must be shown by the State" and "whether good cause exists, being fact-intensive and dependent on circumstances which result in the delay of a probation revocation hearing, is a finding of fact delegated to the discretion of the trial court."  *State v. Geter*, 383 N.C. 484, 491–92 (2022).  Thus, a trial court's finding of good cause to revoke probation and reinstate a sentence is reviewed for abuse of discretion.  *Id.* at 494.  However, this discretion "must not be exercised absolutely, arbitrarily, or capriciously[.]"  *Id.* at 493.

"What constitutes 'good cause shown and stated' is a case-by-case, fact-specific determination which requires a trial court to consider the particular circumstances which mandate that good cause be shown." *Id.* "In reaching its conclusion the court should consider all the facts in evidence, and not act on its own mental impression or facts outside the record, although . . . it may take into consideration facts within its judicial knowledge." *Shankle v. Shankle*, 289 N.C. 473, 483 (1976). However, the "chief consideration in determining whether a defendant's probation should be revoked despite the expiration of the term of probation is whether substantial justice would be advanced or offended by the post-expiration revocation. *Geter*, 383 N.C. at 494 (citing *Shankle v. Shankle*, 289 N.C. 473, 483 (1976)).

Here, the trial court's revocation of defendant's probation 326 days after his probation expired was supported by evidence presented in the record and at the probation hearing. First, defendant had two pending criminal charges against him at the time of the probation hearing. These charges had not gone to trial at the time of the hearing because the case had been continued multiple times. Although the State contends in its brief that defendant could have asked for an earlier hearing on either the probation violation or his pending criminal charges, the State admits in its brief that the reason defendant's charges had not gone to trial was because the State requested these continuances. Thus we are unpersuaded that this argument by the State has merit; however we still agree that the trial court did not abuse its discretion in finding good cause.

Second, sufficient evidence was presented during the probation hearing to support a finding that defendant violated his probation. The State presented evidence obtained from defendant's vehicle during a search of Ms. Moss's property. The vehicle found on the curtilage of Ms. Moss's property was registered to defendant. Inside the vehicle, police found 18.7 grams of oxycodone, 4.8 grams of MDMA, 4.5 grams of cocaine, 2.1 grams of crack cocaine, 55.5 pounds of marijuana, a 9mm Taurus G2C handgun, and a 12-gauge shotgun, which had been altered to have the serial numbers removed. Furthermore, police found shipping labels addressed to defendant and found other documents addressed to defendant in the vehicle. Finally, Ms. Moss admitted to police that she could not open the vehicle and that her son, defendant, had the keys to the vehicle.

Thus, the delay in the probation hearing due to defendant's pending charges and the evidence presented at the probation hearing support the trial court's conclusion that it had good cause to revoke defendant's probation and reinstate defendant's sentence. The trial court's findings were not arbitrary or capricious and substantial justice would be advanced by retroactively revoking defendant's probation and reinstating his sentence. Thus, the trial court did not abuse its discretion in finding there was good cause to revoke defendant's probation after it had expired.

B. Sufficiency of Alleged Violations

Defendant alternatively argues that even if the trial court did not abuse its

discretion in finding it had good cause to revoke defendant's probation retroactively, the trial court prejudicially erred in finding that each alleged probation violation was independently sufficient to revoke his probation. The State argues that this finding was a clerical error and that sufficient competent evidence was presented to show that it was more probable than not that defendant committed new criminal offenses while he was on probation. We agree.

N.C.G.S. § 15A-1344(d2) states,

> When a defendant under supervision for a felony conviction has violated a condition of probation other than G.S. 15A-1343(b)(1) or G.S. 15A-1343(b)(3a), the court may impose a period of confinement of 90 consecutive days to be served in the custody of the Division of Community Supervision and Reentry of the Department of Adult Correction. The court may not revoke probation unless the defendant has previously received a total of two periods of confinement under this subsection.

N.C.G.S. § 15A-1344(d2). Under N.C.G.S. § 15A-1343(b)(1), a regular condition of probation is that a defendant must "[c]ommit no criminal offense in any jurisdiction." N.C.G.S. § 15A-1343(b)(1).

Defendant argues the trial court committed reversible error by indicating in Box 4 of the probation revocation form that each of defendant's six violations were independently sufficient to revoke his probation. Specifically, defendant argues that violations 1-3, which related to a positive marijuana test and the defendant being in arrears, were not criminal offenses under N.C.G.S. § 15A-1343(b)(1) and the trial court should have imposed a period of confinement of 90 days. The State argues the

trial court checking Box 4 on the form was merely a clerical error and the trial court intended to revoke probation because it found defendant committed criminal offenses while on probation.

This Court confronted a nearly identical issue in *State v. Daniels*, where the trial court had checked both Box 4 and Box 5a on the probation revocation form after defendant was found to have tested positive for marijuana, was delinquent on court payments, and committed a new criminal offense. *Daniels*, 290 N.C. App. 443, 444 (2023). In that case, this Court held that it would remand a probation revocation decision "when the trial court considered an erroneous basis in its discretionary punishment decision" and this Court was "unable to determine what weight the trial court gave to each of the violations of law, including the erroneous one, in reaching its decision[.]" *Id.* at 446. The Court sought to ensure the trial court "exercised its discretion and restrained Defendant's liberty as a conscious and fully informed decision." *Id.* Accordingly, this Court noted that because it was able to ascertain that the trial court properly weighed evidence of probation violations by checking Box 5a on the probation revocation form, the trial court did not abuse its discretion in revoking defendant's probation. *Id.* at 447.

Here, the trial court stated during the probation hearing that after considering all the evidence presented during the probation hearing, the trial court was "reasonably satisfied that [defendant has] willfully violated the conditions provided in subsection five" of the probation revocation form. Additionally, just like the trial

court in *Daniels*, the trial court here also indicated by checking Box 5a on the probation revocation form that defendant had willfully violated the condition that he not commit any criminal offense. Thus, we ascertain from the record that the trial court properly weighed the evidence in concluding that defendant violated his probation by committing a criminal offense and the trial court did not prejudicially err in also checking Box 4 on the probation revocation form.

## C. Confrontation of Witnesses

Defendant also argues that the trial court prejudicially erred in not allowing defendant to confront the officers who searched his vehicle because the trial court did not have good cause as required by N.C.G.S. § 15A-1345(e). We disagree.

During a probation hearing, "the probationer . . . may confront and cross-examine adverse witnesses unless the court finds good cause for not allowing confrontation." N.C.G.S. § 15A-1345(e). "[A] Sixth Amendment right to confrontation in a probation revocation hearing does not exist." *State v. Hemingway*, 278 N.C. App. 538, 548 (2021). In general, a trial court has "great discretion to admit any evidence relevant to the revocation of defendant's probation." *State v. Murchison*, 367 N.C. 461, 465 (2014) (internal citations omitted). When hearsay evidence is relevant for determining whether defendant had violated a condition of his probation by committing a criminal offense, the trial court may admit this evidence as it is not bound by the rules of evidence. *Id.*

Here, Officer Wood was the only officer to testify during the probation hearing.

Defendant objected to Officer Wood's testimony on hearsay and the Sixth Amendment because he was not the officer who searched defendant's vehicle. However, Officer Wood was the charging officer in the case and not only did he speak with defendant during his custodial interview when defendant was arrested, but he was also in direct communication with the officers who conducted the search on defendant's vehicle. Because the Sixth Amendment does not apply to this probation hearing and hearsay statements may be admitted during probation hearings, the trial court did not abuse its discretion in allowing Officer Wood to testify as to what other officers told him about the case.

## III.    Conclusion

For the foregoing reasons, we affirm the trial court.

AFFIRMED.

Chief Judge DILLON and Judge HAMPSON concur.

Report per Rule 30(e).